Good morning, Your Honor. Sejal Zota from the National Immigration Project of the National Lawyers Guild for Amicus. I will be sharing argument today with Andrew Knapp, Petitioner's Counsel, and I will be addressing whether 18 U.S.C. 16b is void for vagueness under Johnson. And Mr. Knapp will address our alternative argument, whether Johnson requires application of the minimum conduct test should this court not find the statute void for vagueness. Your Honor, two years ago, the government, in the course of litigating this case, said that both of the 16b and the residual statute both require the same analysis. In fact, in the briefing on page 26 of its answering brief, it says, and indeed, both the ACCA and the 4B1.2 apply the same essential analysis as under 16b. Your Honor, the government is right. Both of these standards require the same analysis. They contain the same flaws. And we would ask the court to hold the government to that significant concession. And I understand that the government is singing a different tune today. However, nothing in the Johnson decision changes that statement. Well, but wouldn't it, Counsel, wouldn't it be correct that we need to decide what the government, the government, the Supreme Court didn't exactly buy their argument? So I think from this standpoint, is it your contention that Johnson overrules Leocal, even though Leocal was not discussed in the majority opinion in Johnson? No, Your Honor. We believe that the language of 16b, it requires courts to apply the ordinary, the court to construct a hypothetical ordinary case. And we believe that Johnson found that ordinary case analysis to be impossible. And thus found... Now on the ACCA, but they didn't address 16b. That's correct, Your Honor. So I guess what I'm asking you is, you still say the ordinary case applies. That has not been overruled. We believe the language of 16b calls for the ordinary case analysis. And we believe that analysis to be unconstitutional. And so we think that 16b must... But wouldn't it have had to, if you don't use the ordinary case analysis, they would have had to overrule Leocal and they don't talk about Leocal. Your Honor, they don't talk about Leocal. Your Honor, in James, they, the in your, by its nature language of 16b, the court interchangeably uses that language with ordinary case on page 209 of the James opinion. They use those two terms in the same context. And so by its nature requires the ordinary case analysis in 16b. And because Johnson found, Your Honor, you're correct. It did not overrule 16b. But 16b was not the question presented to the court. And the ordinary case analysis, because it injects two uncertainties into both the residual cause inquiry and the 16b inquiry, you know, 16b has the same problem. The first uncertainty, Your Honor, is how is a court to determine what the ordinary, what the hypothetical ordinary case of a crime is? And the second uncertainty... The ACCA has, but the ACCA has like four crimes that are listed, right? As opposed to here, we're just looking at what's the ordinary case in a burglary, correct? Yes, Your Honor. In fact, in the Johnson opinion, I think on page 2561, when saying that other risk-based standards might not be as problematic, the court pointed out that there's no confusing list of examples in those other risk-based standards, the enumerated crimes. But it immediately followed this by saying, more importantly, those other risk-based crimes, they don't gauge the risk by tying it to a hypothetical ordinary case, to this mythical standard, unlike 16b. And so the court was telling us that it was primarily troubled by these two uncertainties injected into the analysis by the ordinary case. And because 16b calls for that same analysis, Your Honor, it suffers from the same flaws. It is also unconstitutional. Well, but Justice Scalia said that shades of red is not... that's not vague, right? It was when you get into maroon, this, that, and the other. So why isn't the ordinary burglary just shades of red? Well, Your Honor, like I said, it immediately followed that with the more importantly language. But, Your Honor, additionally, I would note that we know that the enumerated crimes, that isn't what the Supreme Court was primarily concerned with, because the Supreme Court, this Circuit, and the Solicitor General have all cited to 16b and the ACCA residual clause interchangeably, despite the lack of those enumerated crimes. And so, for example, in Begay, the Supreme Court cited to Leocal several times when talking about, you know, Leocal's 16b case when talking about the residual clause. Similarly, in Chambers, Justice Alito discussed Leocal and noted that 16b and the ACCA residual clause, they're closely related. And this Court, and Gomez-Leon actually noted, you know, said it's unclear that any meaningful difference remains between 16b and the residual clause. And later, in Rodriguez-Castellon, this Court relied on at least six residual clause cases, you know, in a 16b case, and finding the statute was a 16b crime of violence. Your Honor, I mean, I would also note that the Solicitor General, in the course of litigating Johnson, actually said, you know, although Section 16 refers to the risk that force will be used rather than injury will occur, it is equally susceptible to Petitioner's central objection to the residual clause. Like the ACCA, Section 16 requires the Court to identify the ordinary case of the commission of the offense and to make a common-sense judgment about the risk of confrontations and other violent encounters. Your Honor, I would submit that the SG is correct there, that these analyses call for the same inquiry, and this Court should hold the government to that concession. Are there any other prior cases that we have, if we agree with you, that we need to overrule? And based on Johnson? Are there other cases that you would have to overrule? Are there statutory interpretations subject to the same flawed ordinary case analysis? Your Honor, only if that statute, by its language, called for the ordinary case analysis, then that statute would have the same two fatal uncertainties, but only if the statute, by its language, called for the ordinary case analysis. And does it make any difference in your mind that this 16B is a civil statute as opposed to a criminal statute? No, Your Honor. I would point the Court to Jordan v. DeGeorge, in which the Supreme Court clearly said that the vagueness doctrine applies to immigration law. There, they actually applied it to a removal ground. This Court, too, in Rojas-Garcia, entertained a vagueness challenge to a removal ground. And more recently, in Alphonsus v. Holder, this Court considered whether particularly serious crimes, as that definition is used in immigration law, whether that was unconstitutionally vague. Last, Your Honor, I would note that, historically, that doctrine has applied to other civil cases, including an employee termination case, economic regulation. So there's no doubt that this doctrine applies to civil cases. I guess my last question for you would be, do you think that the addition or the omission of four specific statutes, I mean, crimes, makes this statute any more or any less vague than the ACCA? Your Honor, I would argue that it arguably makes it more vague. You know, the fact that you would argue that it arguably makes it vague, that means you can make an argument, but is it a correct argument? Well, Your Honor, the fact that the Supreme Court couldn't do the analysis with four crimes guiding the inquiry, it's unclear to me how the Court can do the analysis without any crimes guiding the inquiry, how they can do the analysis in a vacuum. Is that the end of your argument? Yes, Your Honor. Thank you. Good morning. May it please the Court, I'm Andrew Knapp, appearing pro bono for Petitioner James Garcia de Maya. I apologize, my law student is no longer a law student, is now a lawyer. It falls upon me to come back and speak with you again. Well, thank you for your pro bono work. You usually don't get two arguments. No, I don't. I was just with all of you, I think, in San Francisco not too long ago. But my argument is very simple. In Lopez Cardona, this Court stated that it must follow Judge Reinhart's decision in Becker unless a Supreme Court decision is irreconcilable with it. And we have that case now. Johnson v. United States is irreconcilable. Johnson casts off the ordinary case approach previously employed by this Court in both the ACCA and the Supreme Court. Well, okay, so that goes back to the question that I asked Amicus in terms of, are you taking the position that Johnson overrules Leocal even though Leocal isn't specifically mentioned in Johnson? Well, Leocal, I think, has the proper 16b analysis that looks to the full scope of the criminal statute. And I think the reason people are focusing on Leocal is because they wanted to give an example of a 16b case where the use of force wasn't an element. And so then they cited to burglary. But it has to be understood that what the Supreme Court meant was generic burglary. It's the fact of the... Well, except for if they did say burglary, which is exactly why we're here, so... But Taylor is why we have to not look at the label. We can't consider just because a state statute labels something burglary that we're talking about the same thing. And it wouldn't have made sense for the Supreme Court to try to give a very clear example of a 16b crime of violence and then say, and this includes non-generic burglary, this includes bizarre state statutes where you can be convicted of burglary for robbing a phone booth or for being an ex-boyfriend coming back to an apartment you've been kicked out of to steal. And none of those crimes would... No, Johnson... To conclude in your... To find in your favor, do we have to find that? No, Johnson did not overrule Leocal. Johnson is an affirmation of Leocal's strict categorical approach. So does the ordinary case doctrine survive? No. James expressed... I mean, Johnson expressly overruled James and James' ordinary case approach, which this Court previously used. Thus, this Court must now treat 16b cases as it does any other, as the Supreme Court just stated in Malooly, quoting from Moncrief, by presuming that the conviction rested upon the least of the acts criminalized by the state statute. And we know from California cases such as People v. Salome that upheld the first-degree burglary conviction for entering a home with the intent to commit stock fraud. And this is a quote from the California court. Well, is Moncrief a 16a offense? Moncrief is not, but Moncrief applied the same categorical approach that has been applied in immigration cases and quoted to some of the immigration cases. And we know in California that you can be convicted of first-degree burglary if you enter to purchase goods and you pass a false check. There's almost no possibility that the criminal intent is going to be discovered until the seller tries to cash that check. It's as Judge Reinhart said himself in 1993 in United States v. Parker, home shoplifting and stock fraud would hardly seem to entail serious potential risk of injury, much less the higher substantial risk of the use of physical force. So without the ordinary case analysis, now that James is gone, none of this Court's precedent applying the ordinary case in 16b cases can stand. So therefore, you have a clean slate. You can look at whether or not committing the elements of California first-degree burglary, which are simply entering with a felonious intent, whether just commission of those elements, not what else might happen, but whether that poses a substantial risk of the use of physical force. Isn't first-degree in California a residence also? It has to be a residence, but it could be a residence that someone has been to many times, that someone used to live in, that someone comes back to without an unqualified possessory right to be there with the intent to commit a crime. It could be an au pair who pilfers a ring while the mom is not home. It's just if you look at the actual cases, if you look at what the elements require for conviction, if you say that that poses a substantial risk that the use of force will be resorted to, then you can say that about any crime, and then there's no distinction at all. And I see that I'm down to very few moments, and I'd like to reserve the rest of my time  Thank you, counsel. Your Honor, it's Nancy Cantor on behalf of the Attorney General. Good morning. Good morning. I want to thank the Court's indulgence for rescheduling argument for today. Yesterday was my son's first day of first grade, so I thank you for your flexibility allowing me to be there. The government's position today is that there's simply no basis for overturning Leocal and this Court's precedent on crime of violence cases and the application of the ordinary case test to those cases. The government concedes that there are similarities between 16b and the ACCA's residual clause. Both employ a risk-based analysis of the ordinary case to determining whether or not an individual has been guilty of that offense. However, the key... What about counsel for the petitioner making the argument that you basically, that the position of the government in the past has been that the 16b analysis is the same as the ACCA, and then now that you've lost on the ACCA, that, okay, oops, it's not. Well, Your Honor, the test is the same. The ordinary case test survives, well, the government's position today is that the ordinary test case survives even post-Johnson. Johnson's problem was with the application of the test to the text of the ACCA's residual clause. Because the text... How is the test so different from 16b? I mean, it uses substantial risk as opposed to serious potential risk. Does that make a difference? No, Your Honor. It is the four enumerated offenses followed by the or otherwise involved conduct language of the ACCA residuals clause that creates the problem. As noted, as I believe we addressed in our supplemental briefing, in order to engage... In order to conduct the ordinary case analysis under the ACCA, the government must look for otherwise involves conduct that presents the risk of injury during the course of the commission of these four types of offenses. That includes burglary, arson, or extortion. Arson and extortion... Well, extortion, Your Honor, doesn't... But it seems to me that the ACCA, if anything, is less vague than 16b because it tells you the kinds of crimes that it suggests would fall within it. Well, the difference... The difficulty with the ACCA is that the four different crimes are completely different. Two of the offenses, extortion and break-in entering, normally, you know, extortion certainly normally don't involve risk of physical injury. Really? Does it? Do you think so? We don't know. Do we? I mean, it could just be a threat. But, I mean, it is the varied and significant nature of those four different offenses. They aren't similar. There are different types of offenses that require different types of conduct. And when you inject or otherwise involves conduct, you aren't necessarily limiting yourself to the offense itself. You're looking at any other acts that the, I guess, defendant might engage in during the commission of the original enumerated offense to determine the risk. As the... How is that different? We're just looking at during the commission of the burglary. I mean, we're like, and it has to be, the acts committed must tie to the burglary. So a criminal who goes in, someone who goes into breaking and entering can't then also light, you know, I guess, light the house on fire. That wouldn't necessarily tie to the burglary itself. And he goes in to steal jewelry. Excuse me? He goes in to steal jewelry. Then when he's in the act of stealing the jewelry, is that part of the burglary? If he's in the act of stealing the jewelry, that is the breaking and entering. He goes in, enters unlawfully, he goes up to the bedroom, takes the jewelry out of the drawer. Is he committing burglary when he takes the jewelry out of the drawer? I believe so. Okay. I mean... So it's not just the act of entering, it's the act of stealing when he's there. Correct. Okay. I mean, it is the four enumerated... Back to what we were talking about. The Meeke or Petitioner's Council's argument is that Johnson overrules James and, in instance, Leocall. But there's nothing about Johnson that overrules Leocall. No, I don't find anything in your supplemental brief about Leocall except one vague introductory sentence relating this to the four others. I don't see anything about overruling Leocall in your brief. You started out your argument as if this were all about Leocall. That's not the impression one would get from reading your brief. Well, Your Honor, I believe the last and final point in the supplemental brief was that there is not significant... There have not been repeated failures by the Supreme Court to construe 16B. Leocall is the Supreme Court's quintessential 16B case in which they state that burglary is a quintessential crime of violence. There's nothing in Johnson that overturns Leocall or this Court's precedent in Becker and its progeny that first-degree burglary is a crime of violence. So when counsel for the Petitioner was talking about the ordinary crime of burglary, what an ordinary burglary was, he was talking about the au pair, he was talking about people that had been to the house before. Is that the ordinary case? I don't believe so, Your Honor. I believe those are types of burglary that can happen, but that's not the ordinary case. The ordinary case is envisioning a stranger who is breaking and entering a residential home, and that's what we're looking at when we look at first-degree burglary. And that's what I believe the Court in Leocall and this Court in Becker and its progeny is envisioning when it says, you know, first-degree burglary is a crime of violence under 16B. Well, does Moncrief require, as the Petitioner contends, that we have to find that the minimal conduct required to violate the state statute creates a substantial risk? I don't believe so, Your Honor. Moncrief is not a 16B case. It's not looking at crime of violence. So there's simply no basis. I mean, I can't find any basis for overruling this Court's own precedent on the ordinary case rule. Well, the Supreme Court says very clearly two features of the residual clause conspire to make it unconstitutionally vague. As to the first place, the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime. It ties the judicial assessment of risk to a judicially imagined ordinary case of a crime, not to real-world facts or statutory elements. How does one go about deciding what kind of conduct the ordinary case of a crime involves? And then it goes through all kinds of sort of somewhat sarcastic examples, quoting from who was then Chief Judge Kaczynski. They say that you can't – it's too vague to talk about the ordinary case because how does anyone know what an ordinary case is? That's clearly the first point of why this is unconstitutional. Well, Your Honor, that's one of the problematic factors that the Supreme Court identified. It's one of the two features that conspire to make it unconstitutionally vague, is how they put it. Well, the second and more critical feature is that the ordinary case analysis is tied to the four enumerated offenses and the Supreme Court's own inability to develop any reasoned approach to analyzing cases under the ACCA's residual clause. That simply isn't present here in 16b analysis. I'd like to also address the – point the Court's attention to two other sister circuits, the Fourth and the Eighth Circuit, who, following Johnson, have held that Johnson provides no other cases and is limited to ACCA residual clause. The Fourth Circuit in Fertiz v. United States decided on August 18th, declined to extend Johnson to 924E2b, a different definition of crime and violence that is substantially similar to the 16b crime of violence definition. The Eighth Circuit in Cosmis v. United States – What's the 924 statement? Excuse me? What's the – what does 924 – what does that statute say? 924E, which is also a crime of violence provision. I mean, it's substantially similar to our 16b. What is the provision? 924E2b. No, I know, but what does it say? Oh, I don't have it here right with me. Well, I mean, how can I tell whether it's the same as 16b or not? Well, I can – I'm happy to provide a copy with the – You're making an argument. Did you submit a 28J letter? I have not, Your Honor. Don't you think you should? I can certainly do that.    I'm sorry. Well, I'm not. I'm not. I'm not. I'm not. I'm not. I'm sorry. We've had a lot of camp and a lot of travel in the last couple of weeks, but I am happy to submit a 28J, including – Well, a 28J is supposed to be submitted before the argument so that we can discuss the case. I apologize, Your Honor. These were cases that were brought to my attention at the last minute. I don't even have anything other than Westlaw citations for them. So there's four cases you want to – There's another one out of the Eighth Circuit, which is an immigration case that was decided in early August, which says Johnson does not implicate the analysis in this case because it's limited to the residual clause of the ACCA. And that was a crime of violence aggregated felon, 16B. That was a 16B case? That was exactly on point. I mean, those are dicta in which the Court says we don't want to extend Johnson to these other types of cases based on the Supreme Court's own recognition that Johnson is limited. Where does the Supreme Court – Well, let me ask you this. I – Oh, I'm sorry. Judge Wardlock, go ahead. No, it's okay. I know. We have a gap. Go ahead. Judge Wardlock touched on previously, I'm not understanding your argument of how vagueness is a different analysis on a civil statute than it is on a criminal statute. Well, Your Honor – Explain that to me. That – I mean, civil proceedings are not – civil proceedings – Well, I know they're not criminal, but still, people have to – if you're a civil proceeding, you know, people get deported, so they have to know, or – you know, as a practical matter, I don't think anyone commits crimes and says, oh, if I commit this crime, then I'm therefore going to be – under the 16B analysis, I'm going to be – no one's thinking that, but what is your best argument that we employ a different analysis for a criminal statute than a civil statute? Well, the best argument, Your Honor, is that civil proceedings are just different from Here, we – the life, liberty, and due process interests are not as heightened as they are in criminal proceedings. But you don't have a case. Outside of general – outside of general axioms, no. I mean, that's why the court doesn't have to decide that issue unless it holds that, you know, Johnson finds 16B cases to be unconstitutional. So your distinction of Johnson is that it – in the clause, there were four specific offenses mentioned in the Johnson case, and here, they don't have four specific crimes mentioned. Correct. So that's the basic distinction between the two cases. That is the critical distinction that we believe – the government believes led the Supreme Court to find that Johnson was – ACCA's residual. So if this case gets it a felony instead of four felonies plus others, it would be like Johnson. I disagree, Your Honor. Johnson – ACCA's residual clause is looking at the risk of injury in the course of committing these other four types of offenses. Here, we actually have one offense, and we're focusing only on that offense. So it is the application in Johnson of the ordinary – of – it is the inquiry as to whether there's otherwise – whether the individual's conduct otherwise involves conduct that creates the risk of injury in light of these four different offenses. Well, so what is the risk of injury in an ordinary case in a burglary? Is it that you're going into someone's home, and whenever you go into someone's home, that's dangerous? Correct, Your Honor. I believe that's – Is that your – what is it? I believe – Is that your argument? I believe so, Your Honor. In Leocal, the court more or less says first-degree burglary is the quintessential crime of violence because yes, the assumption is that when an individual enters a private dwelling, there is a risk of injury that will ensue. Do you know what the injury rate is on first-degree burglary? I don't have the statistics, Your Honor. I was just – I was sort of wondering the same thing because usually my understanding is that burglars won't enter if they know someone's home. And this whole idea that there's a risk of violence is because someone's home. So, I mean, what is – like California cases, what are they – someone home, someone not home? Your Honor, I don't know the statistics or the numbers. Well, what's the ordinary case? Is the ordinary case that people are home or people are not home? Well, Your Honor, the ordinary case from Leocal, Becker, and its precedent assumes that there is a risk of injury. It doesn't look as to whether or not a person is home or isn't actually home. The underlying assumption is that there is a risk of injury when a person enters the dwelling of another. So that is the ordinary case. We have to know the ordinary case, don't we have to know what happens normally in the usual case? Well, the assumption is – That's what the Court said we can't really do. It's one thing, they say, to look at an actual case, but clearly they say the main problem is nobody knows what an ordinary case is, and that's the part I just read you where they say, what is an ordinary case in a burglary, and then they give all these examples from Judge Kuczynski. Well, Your Honor, I see that my – Does the ordinary burglar invade an occupied home by night or an unoccupied home by day? That's what they say. That's the difficulty they have with this fictitious ordinary case. Well, the difficulty they have – Sorry. You don't know what the ordinary case is, whether it's a case of an unoccupied house or an unoccupied house, daytime or nighttime. Apologize. The ordinary case assumes the risk of injury as a matter of course when an individual enters the home or dwelling of another. The problem in the ACCA's is that you are looking at the risk in light of all of these – juxtaposing the ordinary risk in light of these other four offenses, and that – I'm not trying to help you, but I think the ordinary case of a burglary is a stranger is in your home. Okay. I mean, you can come to the exceptions when it's someone that you've let in before, that it's your housekeeper, it's this person or whatever. The ordinary case is a stranger in someone's home. Okay. Anyone that's done criminal law in California, that's the ordinary case. I presume that's why. And so I think that's why – I mean, that's – if that – that would be the simplest argument to make, whether anyone buys it or not, but that's – I think that's the ordinary burglary, and that would be the argument when the Supreme Court sent the quintessential burglary is when you see a stranger in your home. That in itself is a violence. You don't have to worry about how they committed it. You don't have to worry about what happened. I would be happy, having had no experience as a prosecutor, I would be happy to adopt Judge Keltz. Then my question is, well, does it make a – is the ordinary case different depending on whether someone's home – in the home when the stranger enters or not? That was Judge Kuczynski's question. No, because we – wouldn't we be looking at the ordinary case when someone is home? That would be the ordinary case. Is that what you're – so that's what you're saying, the ordinary case is a stranger comes in someone's home when someone is there? I believe based on – Well, I don't think you're – I don't think you're right on that, because part of the risk of danger is in an ordinary case when a stranger goes into someone's home, the residents could come back, they could be there, any number of things. That's the ordinary case. That's why it's a risk.  That's why it's dangerous. The ordinary case – Judge Kendall, Ms. Wilhelm has answered the Supreme Court's question for you. Got it. Well, Your Honor, my time is up. Thank you for your time. Thank you. Your Honor, I would just make three quick points. You know, the first is, again, because 16b contains the same two fatal uncertainties as a residual clause, it is void for vagueness. And the Johnson court explained that those uncertainties are, one, how does a court determine what this hypothetical, ordinary case of a crime is? You know, as Judge Reinhart pointed out, they cite to Judge Kaczynski, is it Google, is it gut instinct, is it a survey of case law? But the court finally says, because there's – you know, the residual clause provides no reliable way to choose between these alternatives, it results in arbitrary enforcement. Let me ask you this. If the case that was cited, the Eighth Circuit case, are you familiar with that? Your Honor, I'm sorry. I have not looked at those cases closely. Okay. I was just wondering, if we were to go the other way, would we be creating a split in the circuit, or what's happening there? Do you know? Your Honor, I believe I have briefly looked at those cases, and my recollection is that issue was not raised in the Eighth Circuit case, and the courts had something in a footnote, simply in a footnote. It was not the holding of the case. In the Fuertes case, in the Fourth Circuit case, there the court found that the state crime at issue was not a 16B crime of violence, and they said they didn't have to – I'm sorry, it wasn't a 16B, it was a 924 case, but it said it was not a crime of violence, and it said it didn't have to reach the constitutional issue, and it would save that for another day. We would ask the court to reach the constitutional issue, because we think this statute ultimately cannot be saved. It has the same two problems as the residual clause. However, should this court disagree with that, or find that there is a way to save the statute, in that case, we would say that Johnson still rejects the ordinary case analysis, but it affirmed the categorical approach. And so this court must treat 16B like any other case, and presume that the conviction rested on the least of the acts, the minimum conduct. And here we know that that is a privileged entry burglary, when you go purchase a bike from someone's house and you write a bad check. Those were the facts in People v. Nguyen, something like that. And this court has said, in United States v. Parker, that that does not present a substantial risk of force. Thank you, counsel. Thank you. Thank you. Case disargued will be submitted.
judges: Reinhardt, Wardlaw, Callahan